Nancy TALBERT, Appellant,

v.

FIRST NATIONAL BANK IN CENTER, Appellee.

No. 12–82–0081–CV.

Court of Appeals of Texas, Tyler.

Nov. 23, 1983.

On Motion for Rehearing Dec. 15, 1983.

Rehearing Overruled with Opinion Dec. 15, 1983.

Thomas R. McLeroy, McLeroy & McLeroy, Center, for appellant.

John R. Smith, Center, for appellee.

McKAY, Justice.

This is an appeal from a summary judgment rendered in favor of the First National Bank in Center and against Marion and Nancy Talbert.

On September 5, 1978, Marion and Nancy Talbert executed a note to the First National Bank in Center in the amount of $11,-871.34, along with a security agreement granting the bank a security interest in a 1978 Chevrolet Van. On October 5, 1979, Marion and Nancy Talbert were divorced. In the divorce decree Marion Talbert was ordered to assume and discharge the indebtedness.

Appellee, First National Bank in Center, brought suit to collect the amount left un-

paid on the note after the collateral had been repossessed and sold by the bank. The bank sued the Talberts for $4,083.12, plus interest at the rate of ten (10%) percent per annum from the date of maturity until the date of judgment.

Marion Talbert failed to answer the suit. Appellant Nancy Talbert filed an answer and a counterclaim against the bank and a cross-claim against her former husband, Marion Talbert. Nancy Talbert's counterclaim against the bank alleged that the note sued upon violated Tex.Rev.Civ.Stat.Ann. art. 5069–1.04, *et seq.* (Vernon 1971), and art. 5069–4.01, *et seq.* (Vernon 1971), in that the interest rate in the note was usurious. She alleged that the bank violated Tex.Bus. & Comm.Code Ann. (Tex. UCC) § 9.504 (Vernon Supp.1977) in that the bank's repossession and disposition of the collateral was not made and conducted in a commercially reasonable manner. Nancy Talbert also alleged that the bank violated Tex.Bus. & Com.Code Ann. § 17.46 (Vernon Supp. 1977) in representing that the bank's services possessed characteristics and benefits which they did not have, and the bank employed other false and misleading practices.

The bank filed a motion for summary judgment. Nancy Talbert responded to the motion and also filed a motion for summary judgment. The court overruled Nancy Talbert's motion for summary judgment and granted the bank's motion for summary judgment. Nancy Talbert appeals the granting of the motion for summary judgment.

Nancy Talbert's sole point of error is: "The trial court erred in granting summary judgment against appellant because the note upon which this suit is based shows on its face that appellee contracted for interest in excess of that permitted by law."

The note provides for an annual percentage rate of 9.75% and for additional interest upon default at the rate of $.05 for each $1.00 of any installment unpaid for more than 10 days. The note further provides for eleven monthly installments of $200.00 each and one final installment of $9,671.34.

The amount financed was $10,907.83, and the finance charge was $963.51. Nancy Talbert contends that the note in this case provides for *add-on* interest at the rate of 9.75% per annum which is a usurious rate.

The note provides for an annual percentage rate of 9.75%, not an *add-on* interest charge of 9.75%. Nancy Talbert failed to distinguish between add-on interest and annual percentage rate. Add-on interest is a method of calculating interest payments where a percentage of the desired principal is used to calculate the interest cost. The interest cost is then added to the principal to calculate the total amount to be repaid by the borrower. Annual percentage rate is a percentage which results from an equation considering three specially defined factors: amount financed, finance charge, and the term of the loan. The actuarial method is the system of calculations used to find the annual percentage rate (APR), whereby unearned interest can be calculated, and is defined in the Federal Truth-In-Lending Act (TIL), 15 U.S.C.A. § 1606 (1982) as follows:

> The annual percentage rate [is] ... that nominal annual percentage rate which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed, calculated according to the actuarial method of allocating payments made on a debt between the amount financed and the amount of the finance charge, pursuant to which a payment is applied first to the accumulated finance charge and the balance is applied to the unpaid amount financed.

Even though the face of the note discloses an annual percentage rate of 9.75%, in reality the bank actually only charged the Talberts an annual percentage rate of 9.39%. Since the term of the loan was one year, the annual percentage rate can be converted to a monthly basis by dividing by 12, or .0939 divided by 12 equals .007825. Accordingly, the monthly interest rate will then reduce the $10,907.83 loan to zero at the end of twelve months. The interest allocable to the first month is determined by multiplying the monthly rate, or .007825,

by the principal amount of the loan, producing an amount of $85.35 as the initial month's interest charge. Thus, the new balance after receipt of the first installment of the loan will be $10,907.83 plus $85.35 minus $200.00, or $10,793.18. Table 1 illustrates the true successive monthly balances computed to demonstrate the annual percentage rate of 9.39% for the loan in this case.

TABLE 1

| (A)<br>Month of Loan | (B)<br>Interest | (C)<br>Principal | (D)<br>Balance |
|---|---|---|---|
| 1 | $ 85.35 | $   114.65 | $10,793.18 |
| 2 | 84.46 | 115.54 | 10,677.64 |
| 3 | 83.55 | 116.45 | 10,561.19 |
| 4 | 82.64 | 117.36 | 10,443.83 |
| 5 | 81.72 | 118.28 | 10,325.55 |
| 6 | 80.80 | 119.20 | 10,206.35 |
| 7 | 79.86 | 120.14 | 10,086.21 |
| 8 | 78.92 | 121.08 | 9,965.13 |
| 9 | 77.98 | 122.02 | 9,843.11 |
| 10 | 77.02 | 122.98 | 9,720.13 |
| 11 | 76.06 | 123.94 | 9,596.19 |
| 12 | 75.09 | 9,596.19 | 0.00 |
| | $963.51* (Finance Charge) | $10,907.83 (Amount Financed) | |

Since the note was executed in 1978, the statute applicable to the note was Tex.Rev. Civ.Stat.Ann. art. 5069–4.01 (Vernon 1971) which provided as follows:

(1) Any bank, savings and loan association or credit union doing business under the laws of this State or of the United States, and any person licensed to do business under the provisions of Chapter 3 of this Subtitle relating to regulated loans may contract for and receive on any loan made under the authority of this Chapter repayable in consecutive monthly installments, substantially equal in amount, an *add-on* interest charge of Eight Dollars per One Hundred Dollars per annum for the full term of the loan contract. (Emphasis added.)

(2) Interest authorized in Section (1) of this Article shall be computed on the cash advance at the time the loan is made for the full term of the loan contract notwithstanding the requirement of the loan contract for payment in substantially equal regular installments and shall be computed on the basis of a full month for any fractional period in excess of fifteen days. Interest authorized by Section (1) of this Article shall be added to the cash advance and said sum shall be the amount of the loan.

(3) Notwithstanding the foregoing, a lender may make loans which require repayment in irregular or unequal installments and may compute, contract for, charge or receive interest charges under any method or formula different from that prescribed in Section (1) of this Article, provided the total interest charge as scheduled shall not produce an interest yield in excess of that permitted under Section (1) of this Article for the time the loan is scheduled to be outstanding.

.        .        .        .        .

(5) Additional interest for default, if contracted for, may equal but shall not exceed Five Cents for each One Dollar of any scheduled installment when any portion of such installment continues unpaid

* The exact sum of the monthly finance charges indicated under Column (B) of Table 1 is $963.45. The $.06 difference is due to the rounding of the annual percentage rate to two decimals.

for ten days or more following the date such payment is due, including Sundays and holidays. Interest for such default shall not be collected more than once on the same installment. . . .

■ Art. 5069–4.01(3) of the statute provided that the bank could contract for and receive interest that did not produce an interest yield in excess of an add-on interest charge of 8% per annum for an installment loan that provided for irregular or unequal installments. The coinciding annual percentage rate for 8% add-on interest for a note repayable in twelve equal or unequal installments is 14.50%.[1] The bank charged an annual percentage rate of 9.39% on the note in this case which clearly is not in excess of the maximum allowable annual percentage rate of 14.50%, and is not a usurious rate of interest.

Nancy Talbert argues that Tex.Rev.Civ. Stat.Ann. art. 5069–1.04 (Vernon 1971) provided that parties may agree to any rate of interest not exceeding ten percent per annum. However, the statute provided that the maximum rate of interest shall be ten percent per annum *except as otherwise authorized by law* (emphasis added). Under Tex.Rev.Civ.Stat.Ann. art. 5069–4.01 (Vernon 1971), interest at more than 10% per annum may be legally charged on installment loans. *Brown v. Austin Area Teachers Federal Credit Union,* 588 S.W.2d 629, 630 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).

Nancy Talbert complains that the additional interest for default would exceed the legal rate when charged on a per annum basis. Nancy Talbert relies upon *Dixon v. Brooks,* 604 S.W.2d 330 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), as authority for her contention that the late charges are interest, and she cites the *Dixon* case for the proposition that late charges may not be considered as interest where they are authorized by statute. Nancy Talbert's reliance on the *Dixon* case is misplaced. The *Dixon* case involved a payment

of interest as a late charge on a contract for deed and a promissory note for the purchase of real property from an individual. The transaction in the *Dixon* case was not covered by any statute which allowed interest as a late charge in excess of 10% per annum. The transaction in the instant case involved an installment loan from a bank in which Tex.Rev.Civ.Stat.Ann. art. 5069–4.01 (Vernon 1971) authorized additional interest for default.

■ Nancy Talbert contends that art. 5069–4.01(5) does not provide for a late payment charge. The amount contracted for in this note for late payment was $.05 for each $1.00 for any installment which remained unpaid for 10 days or more after the due date. The statutory provision relied upon by Nancy Talbert, art. 5069–4.-01(5), authorizes a lender to make a one time charge of five cents for each dollar of any installment which the debtor fails to timely pay. *Bundrick v. First National Bank of Jacksonville,* 570 S.W.2d 12, 15 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). The amount of additional interest for default contracted for in this note was the exact amount authorized by Tex.Rev.Civ. Stat.Ann. art. 5069–4.01(5) (Vernon 1971). The statute provided, "Interest for such default shall not be collected more than once on the same installment." Therefore, the maximum additional interest charged for default would be 5 percent of any installment. The amount of interest charged did not exceed the amount permitted by law.

We overrule Nancy Talbert's point of error, and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

Appellant urges the proposition that the maximum amount of finance charges that could have been charged on the loan in this case could not exceed the amount of finance charges that could have been charged if the

---

1. See 1 Board of Governors of the Federal Reserve System, Truth in Lending Regulation Z Annual Percentage Rate Table. The tables ap-proximate the annual percentage rate to the nearest .25%.

loan had been repayable in substantially equal installments. Appellant contends that the maximum amount of finance charges should have been $874.99, which is the amount of finance charges allowed if the loan had been repayable in equal monthly installments and if the rate of interest charged on the loan was the maximum allowable rate of 14.5% annual percentage rate which is the equivalent of 8% add-on interest for the loan in this case.

Appellant relies upon the provision in Tex.Rev.Civ.Stat.Ann. art. 5069–4.01(3), (Vernon 1971) which provides that a lender may make loans which require repayment in irregular or unequal installments and may compute interest charges under any method or formula different from that prescribed in Section (1) of this Article (which provides for the add-on interest rate of 8% per annum for loans repayable in substantially equal monthly installments) provided the total interest charge shall not produce an *interest yield* in excess of that permitted under Section (1) of this Article. (Emphasis added.)

Appellant's assumption that the statute requires that the finance charge for a loan repayable in unequal monthly installments can not exceed the finance charge for a loan repayable in equal monthly installments is without merit. The statute provides that the interest yield on loans repayable in unequal installments can not be in excess of the interest yield on loans repayable in equal installments. The interest yield refers to the annual percentage rate. The rate of interest charged on the loan in this case was 9.39% annual percentage rate which produced the finance charge of $963.51 since the loan was repayable in unequal monthly installments. The interest yield or rate of interest of 9.39% annual percentage rate does not exceed the maximum allowable interest yield or rate of interest of 14.5% annual percentage rate.

The fact that the finance charge for the loan at the rate of 9.39% annual percentage rate was more, that is, $963.51, because it was repayable in unequal monthly installments than if it had been repayable in equal monthly installments, that is, $874.99, does not mean that the rate of interest exceeded the maximum allowable rate. In the instant case, the borrower was allowed to repay the loan in unequal monthly installments by making eleven monthly installment of $200.00 and a final balloon installment of $9,671.34.

It stands to reason that the amount of the finance charge would be greater on a loan with the balloon payment because the borrower had the use of more of the lender's money for a longer period of time than if the borrower had repaid the loan using equal monthly installments. Therefore, it is reasonable that the borrower should pay a greater finance charge because of the greater use of the lender's money for a longer period. Even though the finance charge was greater for unequal monthly installments, the interest yield or rate of interest of 9.39% annual percentage rate was not greater than the maximum allowable rate of interest for the loan in this case of 14.5% annual percentage rate.

Appellant's motion for rehearing is overruled.