Spurlock, Charles T., J.
Ryan Bliss (“Bliss”) and Carrie Allen (“Allen") (collectively, “the plaintiffs”) filed this complaint against Intervale Mortgage Corporation (“Intervale”), Decision One Mortgage, LLC (“Decision One”), Countrywide Home Loans, Inc. (“Countrywide”), and Mortgage Lenders Network USA, Inc.[3] (collectively, “the defendants”). This dispute concerns the validity of prepayment penalties included in the promissory notes from the plaintiffs to Intervale and Decision One.
In their original verified complaint, tire plaintiffs charged that the prepayment penalties at issue in this case are in excess of limits mandated by G.L.c. 183, §56,[4] and constitute unfair and deceptive practices under G.L.c. 93A. The plaintiffs moved for a preliminary injunction against the enforcement of the prepayment penalties, which this Court denied, in part based on its initial determination that federal law preempts the state law upon which the plaintiffs relied. In apparent response, the plaintiffs moved to amend their complaint to add federal claims and contemporaneously moved for summary judgment in their favor on the basis of the proposed amended complaint. The defendants opposed the motion to amend on the grounds of futilily and cross-moved for summary judgment against the claims in the original complaint.
For the reasons set forth below, this Court finds that the state law claims in the plaintiffs’ original complaint fail as a matter of law. This Court further finds that the plaintiffs’ motion to amend cannot save this action because the federal law claims that they seek to introduce likewise fail as a matter of law. Accordingly, the plaintiffs’ motion for summary judgment is DENIED, the defendants’ cross motion for summary judgment is ALLOWED, and the plaintiffs’ motion to amend is DENIED.
BACKGROUND
The summary judgment record reveals the following facts. In April of 2004, the plaintiffs entered into a purchase and sale agreement for the purchase of a residential dwelling located at 1520 Columbia Road, Unit 2, South Boston, Massachusetts (“1520 Columbia Road”). The purchase of the property was contingent upon securing financing for 95 percent of the $605,000 purchase price. A mortgage broker allegedly acting on behalf of Countrywide informed the plaintiffs that they were approved for such financing. However, instead of receiving a written commitment of mortgage financing from the defendants, the plaintiffs received a letter dated August 4, 2004 which indicated that they had a commitment for financing.
The closing on the purchase of the property occurred on August 10, 2004.[5] According to the plaintiffs, at the closing, they learned for the first time that the mortgage loan contained a prepayment charge of five percent of the principal amount of the loan. Intervale[6] provided a first mortgage loan (“Intervale loan”) to the plaintiffs in the amount of $484,000.00. The Intervale loan was secured by a mortgage upon the property located at 1520 Columbia Road. The loan included a five percent prepayment charge of the principal amount if the plaintiffs paid off the loan within three years of the August 10, 2004 closing date. If the plaintiffs paid off the mortgage before August 10, 2007, they would incur a prepayment charge in the amount of $24,200.00 to Intervale. To date, the plaintiffs have not attempted to refinance their property, or sell their property and repay the loan, or to repay the loan in full.
Countrywide did not originate the Intervale loan; rather, it is the current servicer of the loan. Countrywide acquired the servicing rights in November 2004, three months after the loan was originated by Intervale. As the current servicer of the loan, Countrywide has the right to collect plaintiffs’ monthly payments, disburse escrow funds, and pursue appropriate remedies in the event of the plaintiffs’ default on any of their loan obligations. In the event the plaintiffs seek to pay off the loan in full before August 10, 2007, Countrywide has the right to collect the prepayment charge.
According to Decision One, it provided processing services as an agent of Intervale with regard to the Intervale loan. Decision One subsequently purchased the Intervale loan. The second mortgage loan, provided by Decision One, was in the amount of $90,750.00 (“Decision One loan”). Similar to the mortgage loan provided by Intervale, the Decision One loan included a provision for the payment of a prepayment penalty if paid prior to the expiration of three years. The Decision One loan is serviced by Mortgage Lenders Network USA, Inc.
On December 10, 2004, after receiving the funds necessary to purchase the property, the plaintiffs’ counsel sent a purported written demand for relief to the defendants indicating that the prepayment penalty provided in the Intervale note and in the Decision One note *217 exceeds the maximum penalty allowed by Massachusetts statute. According to the plaintiffs, the prepayment charge constituted a violation of G.L.c. 93A, §2 by imposing a prepayment charge which is in excess of statutory limits.
In a letter dated February 3,2005, Intervale responded to the demand for relief by asserting that the Intervale loan was governed by federal regulations because it was made by an operating subsidiary of a federal savings bank. According to Intervale, the Massachusetts statute limiting prepayment penalties was not applicable. The defendants asserted that the Decision One loan was not subject to the statute because at the time the loan was made, the statute applied only to first mortgages.
On March 12, 2005, the plaintiffs filed the instant action alleging that the prepayment penalties at issue were in excess of the limits mandated by G.L.c. 183, §56. The plaintiffs seek injunctive relief, invalidation of the prepayment penalties provided in the note, and damages under G.L.c. 93A, §2.
DISCUSSION
I. Summary Judgment A. Standard of Review
To prevail on summary judgment the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party satisfies this burden if it “. . . demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). It is sufficient to demonstrate that “proof of the element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
B. Procedural History
In their original verified complaint, the plaintiffs claim that the prepayment charges at issue are in excess of the limits mandated by G.L.c. 183, §56 and constitute a violation of G.L. 93A, §2. However, in moving for summary judgment, the plaintiffs assert that Intervale’s right to assess prepayment charges is limited under federal law. As noted above, the plaintiffs’ motion to amend their complaint to reflect a federal claim is denied. Therefore, to the extent that this Court discusses the plaintiffs’ federal claims, it is not for the purpose of allowing those claims to advance but rather for the purpose of summary judgment analysis.
In response to the plaintiffs’ motion for summary judgment, the defendants filed a cross motion for summary judgment and opposition to the plaintiffs’ motion for summary judgment. The preemption argument advanced by the defendants establishes the absence of a triable issue on all claims asserted by the plaintiffs.
C.Preemption of Prepayment Penalty
The plaintiffs assert that the prepayment penalties set forth in the promissory notes exceed the limits mandated by G.L.c. 183, §56. However, as an operating subsidiary of a federal savings bank, Intervale is subject to federal regulation. As a result, any state regulation of Intervale is preempted. Therefore, the plaintiffs’ action fails as a matter of law.
Intervale operates under the Home Owners Loan Act of 1933 (“HOLA”) and is subject to the regulations of the Office of Thrift Supervision (“OTS”). 12 U.S.C. §1464(a)(l); 12 C.F.R §560.1(a). Pursuant to authority granted under 12 U.S.C. §1464(a)(l), the Director of OTS “provide[s] for the organization, incorporation, examination, operation, and regulation” of federal savings associations. 12 U.S.C. §1464(a). OTS occupies the entire field of lending regulation for federal savings associations; in fact, the agency is authorized to devise regulations that preempt state laws affecting the operations of federal savings associations. 12 C.F.R §560.2(a). The types of state laws preempted include “(l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and over-limit fees.” 12 C.F.R §560.2(b)(5) (emphasis added).
The preemption of state laws is not without limit, however. Limits on preemption are set forth in 12 C.F.R §560.2(c) and 12 C.F.R §560.110.[7] According to 12 C.F.R §560.110(b), “a savings association located in a state may charge interest at the maximum rate permitted to any state-chartered or licensed lending institution by the law of that state.” A similar limitation is set forth in 12 U.S.C. §1463(g)(1).[8] In 12 C.F.R §560.110(a), the term “interest” is defined as “including] any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended.”
In their opposition to the defendants’ cross motion for summary judgment, the plaintiffs assert that the definition of “interest” in 12 C.F.R. §560.2 includes prepayment penalties. Therefore, the plaintiffs claim that Intervale’s ability to assess prepayment penalties is limited under federal law. Intervale is chartered and located in Rhode Island; therefore, the plaintiffs argue that Intervale is subject to that state’s limitations on prepayment penalties. Accordingly, the plaintiffs assert that the prepayment charge of 5% imposed by Intervale was not only unconscionable, it was in excess of the 2% statutory limit set forth in RI. Gen. Laws §34-23-5(a).[9] As a result, the plaintiffs claim that Intervale is violating federal law and subject to sanctions under both the provisions of 12 U.S.C. § 1463(g)(2)[10] and G.L.c. 93A, §9.
*218 In order to further develop the scope of “interest,” the plaintiffs cite Smiley v. Citibank(S.D.),N.A., 517 U.S. 735 (1996). According to Smiley, the “definition of ‘interest’ contain[s] no indication that it was limited to charges expressed as a function of time or of amount owing . . .” Id. at 745. The plaintiffs further note that the First Circuit explained that “[sjeveral courts, in analyzing the language of section 85 of the Bank Act, have had little trouble in construing the term ‘interest’ to encompass a variety of lender-imposed fees and financial requirements which are independent of a numerical percentage rate.” Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 829 (1st Cir. 1992). The plaintiffs also point to Rockland-Atlas National Bank v. Murphy, which noted that “[a] national bank in making loans is allowed by the Federal law to take, receive, and charge the same rate of interest, if one is established by the statutes of a State where the bank is located, as may be charged by the State banks.” 329 Mass. 755, 756 (1953).
The plaintiffs’ federal claim is dependent upon a finding that the term “interest” includes prepayment charges. While the plaintiffs take great lengths to develop the federal definition of interest, they are incorrect in their assertion that the term encompasses prepayment charges. Congress intended to provide OTS with broad regulatory power. See Fidelity Federal Sav. & Loan Ass’n v. de la Cuesta, 458 U.S. 141, 161 (1982). As noted above, OTS is authorized “to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations”; the agency has explicitly preempted state laws concerning prepayment penalties. 12 C.F.R. §§560.2(a) and 560.2(b)(5). Additionally, prepayment penalties are authorized under 12 C.F.R. §560.34. As a subsidiary of a federally chartered savings bank, Inter-vale is subject to the regulations of the OTS. Any inconsistent state law is necessarily preempted. See Crosby v. National Foreign Trade Council, 530 U.S. 363, 372-73 (2000) (state law is preempted when Congress intends federal law to occupy the entire field or the state law conflicts with federal law).
In support of their argument that prepayment charges are included within the federal definition of “interest,” the plaintiffs point to the language of 12 C.F.R§560.110. However, that particular provision of the C.F.R. concerns “most favored lender usury preemption”; there is no corresponding language within 12 C.F.R. §560.110 that places a limit on prepayment charges. Any claim that Intervale’s ability to assess prepayment charges is limited under federal law is without merit.
Even if this Court were to look beyond the plain language of the C.F.R. itself, the official commentary concerning 12 C.F.R. §560.2 provides further support to the interpretation of the Court. Published on September 30, 1996 in the Federal Register, the OTS articulated a precise method in determining whether or not a state law is preempted.
According to 61 Fed. Reg. 50,951, 50,966, 50,967 (1996):
When analyzing the status of state laws under §560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.
In this case, the law in question concerns prepayment penalties. That iype of law is listed in paragraph (b). The analysis ends and any state law regarding prepayment penalties is necessarily preempted. Regardless of whether the plaintiffs assert a state claim under G.L.c. 183, §56 or assert a federal claim based on the prepayment limitations set forth in RI. Gen. Laws §34-23-5(a), the plaintiffs’ claims fail as a matter of law. State limitations on prepayment penalties are not applicable to a subsidiary of a federally chartered savings bank.
Decision One’s and Countrywide’s Alleged Violations of Prepayment Limitations
In their motion for summary judgment, the plaintiffs assert that Decision One and Countrywide are violating both the Alternative Mortgage Transaction Parity Act (“AMTPA”), 12 U.S.C. §3801 et seq., and G.L.c. 183, §56 by enforcing a mortgage with prepayment terms that are grossly and unconscionably excessive. According to AMTPA, housing creditors “may make, purchase, and enforce alternative mortgage transactions,” but are subject to the regulations “governing alternative mortgage transactions as issued by the Director of the Office of Thrift Supervision for federally chartered savings and loans associations . . .” 12 U.S.C. §3801(a)(3).
In this case, the plaintiffs rely on a September 26, 2002 OTS amendment to 12 C.F.R. §560.220. In the accompanying rulemaking, the OTS noted that “(b)ecause OTS is no longer identifying its regulations on prepayment penalties and late charges, state laws addressing prepayments or late charges generally would not be preempted by AMTPA.” 67 Fed.Reg. 60,542, 60,548 (2002). Therefore, according to the plaintiffs, preemption of prepayment charges does not apply to Decision One and Countrywide. As a result, the plaintiffs maintain that Decision One and Countrywide violated AMTPAand G.L.c. 183, §56 by enforcing the prepayment penalties in the plaintiffs’ promissory note.
However, according to the defendants, the plaintiffs’ claims against Decision One and Countrywide are barred by the same preemption defenses advanced by Intervale. As the assignees of a mortgage, Decision One and Countrywide essentially step into the shoes of Inter-vale. Specifically, they “succeed! ] to all of [Intervale’s] *219 rights, power[s] and equities.” Progressive Consumers Federal Credit Union v. United States of America, 79 F.3d 1228, 1238 (1st Cir., 1996). As further noted by defendants, the OTS issued an opinion letter in which it explicitly stated that “those who purchase or are assigned loans originated by a federal savings association would be subject only to the same claims and defenses that would apply to the federal savings associations that originated the loan.” Office of Thrift Supervision, Chief Counsel Letter (July 22, 2003).
In their opposition to the defendants’ motion for summary judgment, the plaintiffs concede that Decision One and Countrywide are “subject only to the same claims and defenses that would apply to the federal savings associations that originated the loan.” However, the plaintiffs assert that this principle has no application as Intervale has violated the interest limitation set forth in 12 C.F.R. §560.110(b). As noted above, however, Intervale did not violate this limitation and, as a result, Decision One and Countrywide cannot be held to have violated purported prepayment limitations.
G.L.c. 93A
According to the language set forth in G.L.c. 93A, §2, “(u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” When determining whether a particular course of conduct should be deemed unfair under G.L.c. 93A, the Court evaluates “(1) whether the practice... is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3) whether [the conduct] causes substantial injury.” PMP Associates, inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
A G.L.c. 93A claim “is an appropriate matter for summary judgment under rule 56 only if there is no genuine issue of material fact.” Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass.App.Ct. 723, 725 (1979). In their complaint, the plaintiffs allege that the defendants’ failure to provide the plaintiffs with written commitments for financing, which disclosed the prepayment penalties, before closing constituted a violation of G.L.c. 93A, §2. Additionally, the plaintiffs claim that the prepayment penalties are grossly and unconscionably in excess of the limits mandated by state law.
As noted above, however, the prepayment penalties at issue do not violate applicable law. Furthermore, the record does not indicate the defendants attempted to collect or impose the prepayment charges. Therefore, it does not appear that the plaintiffs have suffered any injury. Even if the defendants failed to provide the plaintiffs with written commitments for financing or to disclose the prepayment penalties prior to closing, the plaintiffs have not produced any evidence that would indicate such conduct is “immoral, unethical, oppressive or unscrupulous.” Therefore, the plaintiffs’ G.L.c. 93A claim fails as a matter of law.
II. Motion for Leave to Amend
Pursuant to Mass.R.Civ.P. 15(a), the plaintiffs move for leave to amend their complaint. In their verified complaint, the plaintiffs sought a declaration that the defendants’ prepayment penalties are in excess of that permitted under G.L.c. 183, §56 and in violation of G.L.c. 93A, §2. However, the plaintiffs now assert that the defendants’ prepayment penalties violate the federal law limit derived from 12 C.F.R. §560.110(b). The plaintiffs argue that this Court is empowered to declare under G.L.c. 231 A, §1 that the defendants have violated 12 C.F.R. §560.110(b) and 12 U.S.C. §1463(g)(l) by imposing five percent of the original loan principal as prepayment penalties. The amended complaint deletes any reference to G.L.c. 183, §56 as the statutory limit which makes the defendants’ prepayment penalty illegal.
Leave to amend “shall be freely given when justice so requires.” Mass.R.Civ.P. 15(a). While the decision whether to allow a motion to amend is within the discretion of the Court, leave should be granted unless there are compelling reasons for denying the motion. Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264 (1991); Goulet v. Whitin Mach Works, Inc., 399 Mass. 547, 549 (1987). Such reasons include undue delay, bad faith or dilatory motive by the movant, undue prejudice to the opposing party, and futility. Castellucci v. United States Fidelity & Guar. Co., 372 Mass. 288, 289-90 (1977).
The plaintiffs argue that Intervale, as the subsidiary of a federally chartered savings bank in Rhode Island, is subject to 12 C.F.R. §560.110(b) and therefore limited to assessing the highest prepayment penalty allowed by Rhode Island law. See 12 C.F.R. §560.110(b); R.I. Gen. Laws §34-23-5(a). However, as noted earlier in this Court’s analysis of the summary judgment motions,[11] the plaintiffs’ assertion that the limitations set forth in 12 C.F.R. §560.110(b) are applicable to prepayment penalties is without merit. According to 12 C.F.R. §560.110(b), “[a] savings association located in a state may charge interest at the maximum rate permitted to any state chartered or licensed lending institution by the law of that state.” 12 C.F.R. §560.110(b). Plaintiffs assert that the term “interest” includes prepayment penalties. However, state laws concerning prepayment penalties are explicitly preempted by OTS regulations. See 12 C.F.R. §560.2(b)(5). As a result, any state limitations on prepayment penalties, including RI. Gen. Law§34-23-5(a), are inapplicable to Intervale. Therefore, the plaintiffs’ amended complaint under federal law is futile.
In addition to the problem of preemption, the plaintiffs’ amended complaint relies upon a statute that is inapplicable to this action. R.I. Gen. Laws §34-23-5(a) is applicable to mortgage loans secured by property found within Rhode Island. Here, the subject property is located in South Boston, Massachusetts. As a result, a federal complaint based upon R.I. Gen. Laws §34-23-5(a) is futile.
*220 Even if this Court were to ignore the fatal flaws of preemption and the inapplicability of R.I. Gen. Laws §34-23-5(a), the plaintiffs’ federal claim suffers from further deficiencies. Intervale may charge interest at the maximum rate permitted to any state chartered or licensed lending institution by the laws of Rhode Island. 12 C.F.R §560.110(b). As noted above, the plaintiffs contend that prepayment penalties constitute “interest” as defined under federal law. Therefore, according to the plaintiffs, the five percent prepayment penally at issue violates 12 C.F.R. §560.110(b) because it exceeds the two percent statutory limit on prepayment penalties set forth in RI. Gen. Laws §34-23-5(a). However, according to the corresponding state provision on maximum interest rates provided in RI. Gen. Laws §6-26-2(a),[12] lenders may charge a maximum interest rate of twenty-one percent. There is no indication that the Rhode Island legislature intended to include prepayment penalties under the purview of RI. Gen. Laws §6-26-2(a). In fact, prepayment penalties are explicitly excluded from the definition of “interest” as RI. Gen. Laws §34-23-5 notes, “(a]ny prepayment penalty imposed under this section shall not be construed as interest under the provisions of §6-26-2.” RI. Gen. Laws §34-23-5(d). As noted by the defendants, “the Federal definition of the term ‘interest’ in paragraph (a) of this section does not change how interest is defined by the individual states (nor how the state definition of interest is used) solely for purposes of state law." 12 C.F.R §560.110(c). As a result, plaintiffs’ federal claim based upon the interplay between 12 C.F.R §560.110(b) and RI. Gen. Laws §34-23-5(a) is misplaced.
The plaintiffs’ motion for leave to amend is futile as the proposed federal claim will not succeed as amatter of law.
ORDER
For the reasons discussed above, it is hereby ORDERED that the plaintiffs’ motion for summary judgment on all claims he DENIED.
It is further ORDERED that the defendants’ cross motion for summary judgment be ALLOWED on all claims.
It is further ORDERED that the plaintiffs’ motion for leave to amend be DENIED.

Mortgage Lenders Network USA, Inc. is no longer a defendant in this matter.

G.L.c. 183, §56 provides in pertinent part that the maximum prepayment penalty on a mortgage note “shall be the balance of the first year’s interest or three month’s interest whichever is less” unless the prepayment is made within the first thirty-six months for the purpose of refinancing with another institution.

The financing package was comprised of two loans: a first mortgage loan from Intervale and a second mortgage loan from Decision One.

Intervale is a wholly owned operating subsidiary of Domestic Bank, FSB, a federal savings bank. Domestic is a federal savings association organized under the Home Owner’s Loan Act (“HOLA”), 12 U.S.C. §1461 et seq., and operating under the supervision of the Office of Thrift Supervision (“OTS”).

 12 C.F.R §560.2(b) sets forth specific examples of preempted state laws. However, the provision also notes a lrmi-tation on preemption. Specifically, the provision states, “[e]xcept as provided in §560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding . . .” 12 C.F.R. §560.2(b) (emphasis added).
12 C.F.R. §560.110 concerns most favored lender usury preemption. While further limitations are set forth in 12 C.F.R. §560.2(c), that section concerns state laws that only incidentally affect the lending operations of Federal savings associations and is therefore inapplicable to the present proceeding.

 12 U.S.C. §1463(g)(l) provides that;
Notwithstanding any State law, a savings association may charge interest on any extension of credit at a rate of not more than 1 percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district in which such savings association is located or at the rate allowed by the laws of the State in which such savings association is located, whichever is greater.

According to R.I. Gen. Laws §34-23-5(a):
(a) Every bank, trust company, loan company, building-loan association, credit union, finance company and other person(s) making a loan or loans secured by a mortgage or mortgages on real estate located in Rhode Island containing thereon dwelling houses of not more than four (4) dwelling units shall provide in the mortgage note, and in any event the loan or loans shall be upon the condition that the full payment of mortgage may be made at any time after one year from the making of the loan without penalty, provided further, that during the first year, penalty or other charges for prepayment shall not exceed two percent (2%) of the balance due at date of the pay-off

 12 U.S.C. § 1463(g)(2) provides that:
If the rate prescribed in paragraph (1) exceeds the rate such savings association would be permitted to charge in the absence of this subsection, the receiving or charging a greater rate of interest than that prescribed by paragraph (1), when knowingly done, shall be deemed a forfeiture of the entire interest which the extension of credit carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than 2 years after the date of such payment, an amount equal to twice the amount of the interest paid from the savings association taking or receiving such interest.

See supra, Summary Judgment Discussion on Preemption of Prepayment Penalty.

According to R.I. Gen. Laws §6-26-2(a):
(a) Subject to the provisions of title 19, no person, partnership, association, or corporation loaning money to or negotiating the loan of money for another, except duly licensed pawnbrokers, shall, directly or indirectly, reserve, charge, or take interest on a loan, whether before or after maturity, at a rate which shall exceed the greater of twenty-one percent (21%) per annum or the alternate rate specified in subsection (b) of this section of the unpaid principal balance of the net proceeds of the loan not compounded, nor taken in advance, nor added on to the amount of the loan.